UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| GREWAL & ASSOCIATES, P.C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:10-cv-214 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| HARTFORD CASUALTY INSURANCE | ) | |
| COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil action brought to collect under a property insurance policy. Defendant, Hartford Casualty Insurance Company, issued a property insurance policy covering two commercial buildings. One building was occupied by plaintiff Grewal & Associates, a law firm; the other was owned by plaintiff Grewal Real Estate, a limited liability company involved in the real estate business. Manvir Grewal is the sole principal of both, and the buildings are located on adjoining lots in Lansing, Michigan. The building occupied by Grewal & Associates, the law firm, was destroyed by fire on August 30, 2007. The present lawsuit involves a claim by the firm against defendant Hartford under the business interruption coverage of the insurance policy.

Among other issues, defendant disputes plaintiffs' claim for $1.2 million in net business loss arising from disruption caused by the fire. According to defendant, plaintiffs principally base their claim on records of deposits into the law firm's general checking account. Plaintiffs assert that the average monthly deposits into the firm's general checking account in the

eighteen months following the fire were significantly lower than the average monthly deposits made in the twenty months preceding the fire. To test plaintiffs' damage claim, the insurance company has issued subpoenas to plaintiffs' financial institutions, seeking production of records relating to plaintiffs' bank accounts, including the law firm's general accounts and IOLTA trust accounts. Defendant represents to the court that it already has evidence that plaintiffs' bookkeeping practices were "unconventional," and believes that the firm's banking records will undermine the law firm's loss of income claim.

Plaintiff Grewal & Associates, P.C. has moved to quash or modify the subpoenas issued to its financial institutions, citing concern about possible disclosure of material protected by the attorney-client privilege. In support of the request to quash or modify the subpoenas, Grewal & Associates relies on Rule 1.6 of the Michigan Rules of Professional Conduct, which generally requires an attorney to hold in confidence all information gained in the professional relationship that the client has requested to be held inviolate or the disclosure of which would be embarrassing or prejudicial to the client. MICH. R. PROF. COND. 1.6(a). Plaintiff requests that the court quash the subpoenas or that the court issue a protective order allowing it to redact client identities and other information, such as client bank account numbers and social security numbers, to protect the confidences of the firm's clients. District Judge Robert Holmes Bell has referred the motion to me for decision pursuant to 28 U.S.C. § 636(b)(1)(A). On August 18, 2010, I entered an interim order preserving the status quo pending resolution of the motion, after a telephone conference with counsel. Defendant has now responded to the motion, and both parties have waived oral argument. For the reasons set forth below, I conclude that plaintiff's motion is not meritorious. It will therefore be denied.

**<u>Discussion</u>**

**1.**

Defendant issued essentially identical subpoenas to eighteen financial institutions seeking financial records for Manvir S. Grewal, Lisa S. Grewal (his wife), Grewal & Associates, P.C., and Grewal Real Estate, LLC. The subpoenas called for production of any and all bank records, including loan applications, promissory notes, records of checking and savings accounts, and cancelled checks for the years 2005 through 2009. Two of the subpoenas were issued by other courts: the Northern District of Texas (subpoena directed to Comerica Bank) and the Eastern District of Michigan (subpoena directed to Citizens Bank of Flint).

This court lacks authority to quash or modify any subpoena issued by another court. Motions to quash or modify subpoenas are governed by Rule 45(c)(3) of the Federal Rules of Civil Procedure. The rule clearly invests the *issuing court* with the power to quash or modify a subpoena. Hence, the power to quash or modify a subpoena lies in the issuing court, not this court. *See United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 468 (6th Cir. 2006); *accord In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). With regard to the subpoenas issued by the Northern District of Texas, the Eastern District of Michigan, or any other court, this court would exceed its authority if it attempted to interfere with process issued by another court. Plaintiff's motion to quash or modify any subpoena not issued by this court will therefore be dismissed for lack of jurisdiction.

**2.**

Plaintiff Grewal & Associates, P.C. seeks relief from the subpoenas issued from this court on the ground of attorney-client privilege. Because this is a diversity case arising under Michigan law, questions of privilege are likewise governed by Michigan law. FED. R. EVID. 501; *see Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 n.1 (6th Cir. 2007). This court must therefore attempt to discern and apply Michigan law to resolve the claim of attorney-client privilege.

Under Michigan law, the attorney-client privilege attaches to communications made by a client to his or her attorney acting as legal advisor for the purpose of obtaining legal advice on some right or obligation. *See People v. Waclawski*, 780 N.W.2d 321, 359 (Mich. Ct. App. 2009). "The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed." *Id.* (quoting *Ravary v. Reed*, 415 N.W.2d 240, 243 (Mich. Ct. App. 1987)). Michigan law accords a narrow scope to the attorney-client privilege: "it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice." *Fruehauf Trailer Corp. v. Hagelthorn*, 528 N.W.2d 778, 780 (Mich. Ct. App. 1995).

Rather than relying on these well-established principles of Michigan common law, plaintiff relies completely on Rule 1.6 of the Michigan Rules of Professional Conduct. Rule 1.6 does not establish an evidentiary privilege. Rather, it prohibits a lawyer from revealing a confidence or secret of a client. On its face, the rule imposes upon attorneys a duty of confidentiality that covers not only client "confidences" (defined as information protected by the client-lawyer privilege) but also "secrets" (defined as "other information gained in the professional relationship that the client has requested to be held inviolate or the disclosure of which would be embarrassing or would be

likely to be detrimental the client."). MICH. R. PROF. COND. 1.6(a), (b)(1). The obligations imposed by Rule 1.6 are clearly not coextensive with the attorney-client privilege. Plaintiff's reliance on the ethical rule, therefore, is misplaced. The rule would be relevant if defendant were attempting to force the law firm to divulge client confidences. The challenged summonses do not seek to compel any disclosure by an attorney. Rather, they seek to reach information in the possession of a third party. The ethical rule is therefore irrelevant to resolution of the issue now before the court.

The claim of attorney-client privilege raised by Grewal & Associates, P.C. is governed by Michigan common law. Michigan law, like federal common law, construes the privilege narrowly and applies it only to confidential "communications." *Fruehof Trailer*, 528 N.W.2d at 780; *cf. Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009) (attorney-client privilege attaches to communications). It does not appear that the Michigan courts have ever squarely faced the question whether documents of a third party, such as a bank, can ever be considered "communications" between attorney and client, for purposes of the attorney-client privilege. For at least forty years, however, the federal courts have squarely rejected the recognition of any privilege attaching to an attorney's bank records, whether those records relate to the attorney's general account or client trust accounts. In the most recent case decided by an appellate court, *Reiserer v. United States*, 479 F.3d 1160 (9th Cir. 2007), the court affirmed the denial of a motion to quash an IRS summons issued to the Bank of America for production of an attorney's bank records. The attorney contended that "client identity and fee information should be protected from disclosure." *Id.* at 1165. The court squarely rejected the recognition of any privilege:

> It is well settled that there is no privilege between a bank and a depositor, *Harris v. United States*, 413 F.2d 316, 319-20 (9th Cir. 1969) (involving production

of all checks deposited into or withdrawn from an attorney's trustee account). In refusing to extend the attorney-client privilege, we stated:

> The reasons which led to the attorney-client privilege, such as the aim of encouraging full disclosure in order to enable proper representation, do not exist in the case of a bank and its depositor. Moreover, the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client.
>
> *Id.* at 319-20. As *Harris* explains, there is no confidentiality where a third party such as a bank either receives or generates the documents sought by the IRS. *Because the attorney-client privilege applies only where the communication between attorney and client is confidential, there is no privilege protecting the documents the IRS seeks in the present action.*

479 F.3d at 1165 (emphasis added). The court reiterated the longstanding rule that the attorney-client privilege ordinarily protects neither the client's identity nor information regarding the fee arrangements reached with the client. *Id.*

Other federal appellate courts have likewise rejected the contention that bank records relating to the transfer of funds into and out of a lawyer's trust account are privileged communications. *See, e.g., SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 167 (10th Cir. 1971); *Harris v. United States*, 413 F.2d 316, 319-20 (9th Cir. 1969); *O'Donnell v. Sullivan*, 364 F.2d 43, 44 (1st Cir. 1966). This is because the attorney-client privilege extends only "to the substance of matters communicated to an attorney in professional confidence," and the deposit and disbursement of money in a commercial checking account are "not confidential communications." *First Sec. Bank*, 447 F.2d at 167.

In a very similar case, a federal district court rejected a claim that bank records relating to a lawyer's IOLTA account contained privileged or confidential information.

> Generally, there is no legitimate expectation of privacy in the contents of checks, deposit slips or bank statements in a bank's possession. Checks are negotiable instruments used in commercial transactions, voluntarily conveyed to banks, and exposed to the banks' employees in the ordinary course. Case law establishes that petitioners' bank records are not protected by the attorney-client privilege. Further, the professional rules are not violated because [the attorney] is not revealing a confidence or secret of her clients. The summons requests that Bank One, not [the attorney], produce the information requested. The Petitioners' arguments ignore the basic nature of such banking transactions. They are not confidential communications among attorney and client. They are commercial transactions which disclose the identity and other identifiers of the parties to the transaction to the third party banking institution. Even if the transactions could be viewed by a large stretch of the imagination to be communicative, in no way could they be considered to be confidential. If the Petitioners and their clients sough confidentiality regarding the monetary transactions, they blew any cover of secrecy by utilizing a commercial banking enterprise.

*Najjar v. United States*, 2003 WL 21254772, at * 2 (S.D. Ind. April 11, 2003) (citations omitted). On the same basis, numerous federal district courts have rejected the recognition of any attorney-client privilege attaching to an attorney's bank records. *See, e.g., Sunshine Behavioral Health Servs., Inc. v. United States*, 2009 WL 1850310, at * 3 (M.D. Fla. June 26, 2009); *SEC v. W Fin. Group, LLC*, 2009 WL 636540 (N.D. Tex. Mar. 9, 2009); *McClary v. Walsh*, 202 F.R.D. 286, 293 (N.D. Ala. 2000).

Plaintiff has not cited a single case, whether decided under Michigan law or the law of any other jurisdiction, supporting the recognition of a privilege in the circumstances of this case. Although the Michigan courts have not published a case on this precise issue, the federal decisions cited above are consistent with Michigan law, as both federal and state law limit the attorney-client privilege to "communications" between attorney and client, and in no sense can bank records be

deemed communications. I therefore conclude that the Michigan courts would follow the unanimous holdings of the federal courts on this issue.

The burden of establishing the existence of the attorney-client privilege rests with the person asserting it. *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Plaintiff has established neither a legal nor a factual basis for the recognition of a privilege attaching to records in the possession of a financial institution. Plaintiff's motion to quash or modify subpoenas issued by this court or for protective order will therefore be denied. To the extent that plaintiff is concerned about the filing of social security numbers or other personal identifiers in the court record, counsel are reminded of the redaction obligations imposed by Fed. R. Civ. P. 5.2.

Dated: September 30, 2010           /s/ Joseph G. Scoville
                                    United States Magistrate Judge